IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARKO L.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 16 C 9723 |
| v. | ) | |
| | ) | Magistrate Judge |
| ANDREW MARSHALL SAUL, | ) | Maria Valdez |
| Commissioner of Social Security[2], | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Marko L.'s claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 31] is denied, and the Commissioner's request to affirm the ALJ's decision is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Andrew Saul has been substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

**I.     PROCEDURAL HISTORY**

Plaintiff originally filed his claim for DIB and SSI payments in January 2006, alleging disability since April 21, 2005. On October 17, 2007, an Administrative Law Judge ("ALJ") held a hearing and on March 28, 2008 issued a decision finding that Plaintiff had been under a disability from April 21, 2005 until April 1, 2007. Plaintiff appealed the finding that his disability had terminated, and after the Appeals Council denied review filed suit in federal court. On May 2, 2009, the reviewing court issue an order affirming the ALJ's decision.

On June 21, 2010, Plaintiff filed a new application (the application at issue) for DIB and SSI payments, alleging disability since his original onset date of April 21, 2005. A different ALJ held a hearing on May 31, 2012, and on June 29, 2012 found that *res judicata* applied to preclude a finding of disability from March 28, 2008 (the date of the prior ALJ's decision) to May 2, 2009 (the date of the reviewing court's decision). The ALJ found Plaintiff was not under a disability since May 2, 2009. On February 26, 2014, the Appeals Council remanded the case, finding that the ALJ improperly applied *res judicata* to the period from the date of the prior ALJ's decision to the date of the reviewing court's decision. On November 13, 2014, another hearing was held before the ALJ and on December 15, 2014, the ALJ found Plaintiff not disabled.

Plaintiff appealed again, and after the Appeals Council denied review, filed this case on October 14, 2016. On July 20, 2018, this Court remanded the matter to

2

the Commissioner for further proceedings pursuant to the sixth sentence of 42 U.S.C. § 405(g) for consideration of new evidence. On April 18, 2019, a hearing was held before the ALJ. Plaintiff personally appeared and testified at the hearing and was represented by counsel. Vocational expert Richard Fisher also testified.

On May 24, 2019, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. The Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g).[3] *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II.    ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of August 1, 2007. At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative joint disease of the left knee, status post total knee arthroplasty in 2012; and left hip degenerative joint disease, status post acetabular repair. The ALJ concluded at step three that his impairments, alone or in combination, do not meet or medically equal a Listing. Before step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work except:

> [T]he claimant can alternate between positions sitting for about an hour, then stand for a few minutes, and then resume sitting; sit a total of 6 hours in an 8 hour workday; stand/walk about 2 hours total in an 8 hour

---

[3] A supplemental record was filed on the docket on September 13, 2019.

> workday with standing up to 30 minutes and walking up to 20 minutes at a time; the position changes are not a break from the workstation and the claimant can continue working during the position changes; never climb ladders/ropes/scaffolds, kneel, or crawl; occasionally climb ramps/stairs, balance, stoop, and crouch; no work around hazards like unprotected heights or moving, dangerous machinery; occasional pushing/pulling with the left lower extremity/foot controls; and frequently handle, finger, feel, and gross/fine manipulations with the non-dominant left upper extremity.

(R. 1037.)

At step four, the ALJ concluded that Plaintiff would be unable to perform his past relevant work as a carpenter. At step five, based upon the VE's testimony and Plaintiff's age, education, work experience and RFC, the ALJ concluded that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a Plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the Plaintiff presently unemployed? (2) Does the Plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the Plaintiff unable to perform her former

4

occupation? and (5) Is the Plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the Plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The Plaintiff bears the burden of proof at steps 1-4. *Id.* Once the Plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the Plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the

5

ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a Plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a Plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

6

### III. ANALYSIS

Plaintiff argues that the ALJ committed the following errors: (1) the ALJ erroneously found that Plaintiff did not meet the criteria for listing 1.02; (2) she erred in failing to consider a closed period of disability; (3) the ALJ erred in her assessment of Plaintiff's subjective symptom statements; (4) she erred in discounting the opinion of Plaintiff's treating physician; and (5) her step 5 determination was unsupported by substantial evidence.

#### A. Listing 1.02

Plaintiff contends that his impairments meet the elements of listing 1.02, which describes major dysfunction of a joint:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in ability to ambulate effectively, as defined in 1.00B2b….

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02A. An inability to ambulate effectively is defined in the regulations as:

> (1) … an extreme limitation of the ability to walk, *i.e.,* an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities….

7

> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitutes effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b.

Plaintiff argues that the ALJ's analysis of Listing 1.02 was insufficient and unsupported by substantial evidence. In discussing Listing 1.02, the ALJ stated:

> Regarding the claimant's degenerative joint disease of the left hip and knee, the undersigned reviewed Listing 1.02A (Major dysfunction of a joint(s) due to any cause). In order to meet the criteria of this listing, there must be involvement of one major peripheral weight-bearing joint, resulting in the inability to ambulate effectively. Here, however, there is no evidence that the claimant is unable to ambulate effectively. Even though, a treating physician, Dr. Samuel Chmell, an orthopedic surgeon, indicated that Listing 1.02A was met in an attorney-generated questionnaire in September 2014, the evidence does not substantiate that conclusion. Dr. Chmell's opinion is discussed in greater detail below, but essentially, the evidence reflects that the claimant's knee prosthesis was stable post-surgically, and there is little evidence of subsequent complication. The claimant's motor strength in the lower extremities remained essentially intact even prior to surgery, as discussed below.

(R. 1037.) Thus, the ALJ's analysis of Listing 1.02 was more detailed than Plaintiff represents in his brief, and the analysis of Plaintiff's ambulatory ability later in the opinion must also be considered. *See Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020) ("[W]hen an ALJ explains how the evidence reveals a claimant's residual functional

capacity, that discussion may doubly explain how the evidence shows the claimant's impairment is not presumptively disabling under the pertinent listing. And, as we've already recognized, '[t]o require the ALJ to repeat such a discussion throughout [the] decision would be redundant.'") (citation omitted).

At the step three analysis and throughout the opinion, the ALJ thoroughly discussed the medical evidence, including that Plaintiff's knee was stable post-surgery and his motor strength remained intact. Furthermore, Plaintiff challenges the ALJ's conclusion solely based on the fact that certain physicians found that Plaintiff required a disabled parking spot. Plaintiff points to no authority that such an observation by Plaintiff's physicians compels a conclusion that Plaintiff cannot ambulate effectively. The ALJ considered these findings explicitly and found them unpersuasive. Thus, the Court finds the ALJ's analysis supported by substantial evidence.

### B. Closed Period of Disability

Plaintiff next argues the ALJ erred in failing to consider a closed period of disability. Specifically, Plaintiff contends the ALJ should have at least considered a closed period of disability during the time Plaintiff was being treated before his knee replacement. The Programs Operations Manual System ("POMS"), an internal agency guideline, states that a claimant is entitled to a closed period of disability if he establishes that he is disabled for a continuous period of twelve months or more but is not disabled at the time of decision. *See DI 25510.001 Closed Period of*

9

*Disability*, POMS, Social Security, https://secure.ssa.gov/poms.nsf/lnx/0425510001. *See also* 20 C.F.R. §§ 404.1594, 416.994.

Contrary to Plaintiff's argument, the ALJ explicitly considered medical evidence beginning from March 29, 2008, the date after the prior ALJ's decision denying benefits. The ALJ also found that Plaintiff was not under a disability since August 1, 2007 through May 30, 2019. Plaintiff simply argues that "[t]he ALJ's rationale for denial is largely based in evidence from after Lymperopulos' knee replacement" and is thus erroneous. (Doc. No. 32 at 11.) However, Plaintiff does not cite any authority stating that the ALJ is required to do any more than the ALJ did here—consider medical evidence at all relevant times and determine whether Plaintiff was under a disability at any relevant time. Significantly, the Court notes that contrary to Plaintiff's running theme of the ALJ failing to differentiate between evidence before and after Plaintiff's knee surgery, the ALJ explicitly discusses the difference between the two time periods and notes that Plaintiff's condition improved following the surgery. The Court will not remand the case on this basis.

### C. Subjective Statements

Plaintiff next argues the ALJ failed to properly evaluate his subjective symptom statements, but Plaintiff offers no persuasive reason that the ALJ's evaluation of Plaintiff's testimony was erroneous. The Court may overturn an ALJ's credibility determination only if it is "patently wrong," but "failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record is grounds for reversal[.]" *Minnick v. Colvin,* 775 F.3d 929, 937 (7th Cir.

10

2015) (citations omitted). Plaintiff makes one argument on this issue: that the ALJ erred in discussing Plaintiff's testimony that he was "stockpiling" his extra pain medication instead of taking it as prescribed.[4]

The ALJ's interpretation of this comment as negating Plaintiff's complaints of pain somewhat is reasonable, however, and Plaintiff essentially requests that the Court reweigh the evidence to arrive at a different conclusion. This is impermissible and the Court will not re-interpret the statement as Plaintiff requests where the ALJ's interpretation is supported by substantial evidence. *See Elder*, 529 F.3d at 413 (ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported."). The ALJ's discussion of the medical evidence as it related to Plaintiff's credibility, including his prescription medication regimen, was thorough and supported by substantial evidence.

---

[4] To the extent Plaintiff attempts to raise any argument related to the credibility determination aside from the argument regarding prescription medication, such as the ALJ "offer[ing] no other grounds for discounting Lymperopulos' complaints before his 2012 knee replacement[,]" Plaintiff has not explained that argument in any detail. Thus, Plaintiff has waived any other argument. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]").

11

## D. Treating Physician Rule[5]

Plaintiff argues the ALJ failed to follow the "treating physician rule" by not appropriately weighing the opinion of his treating physician and failed to include in the RFC assessment Plaintiff's need to elevate and ice his knee. An ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must also "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Scott*, 647 F.3d at 739; *see also Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016) ("A contradictory opinion of a non-examining physician does not, by itself, suffice as a justification for discounting the opinion of the treating physician."). The regulations require the ALJ to consider a variety of factors, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *See* 20 C.F.R. § 404.1527(c).

---

[5] The Social Security Administration has modified the treating physician rule to eliminate the "controlling weight" instruction. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."). However, the new regulations apply only to disability applications filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply."). Plaintiff's application in this case was filed in 2010, and therefore the ALJ was required to apply the former treating physician rule.

12

Plaintiff's treating orthopedic surgeon, Dr. Chmell, stated in September 2014 that Plaintiff would need to "lie down [and] occasionally elevate the [left] knee" during the workday.[6] (R. 983.) The ALJ extensively discussed Dr. Chmell's medical opinion generally, and the Court will not repeat the entire discussion here. However, the following portion of the ALJ's opinion (among others) is relevant to Plaintiff's only specific challenge:

> Dr. Chmell added that the claimant would lie down during the day and occasionally elevate the knee but did not indicate a specific duration or frequency that the claimant did this. Here, Dr. Chmell provided more description of functional restrictions though his report of "problems" with certain movements lack detail to specific ability to perform those activities. Overall, however, the noted restrictions or "problems" are more consistent with the evidence but are not fully supported by the evidence as a whole. Dr. Chmell's report that the claimant can sit and stand for only about one hour at a stretch has been included in the above residual functional capacity, but the need to lie down throughout the day to elevate the knee is not supported by substantial evidence. In terms of symptoms and clinical findings, Dr. Chmell noted pain and stiffness, pain to palpation over the patella, and 0-90 degree range of motion with pain. However, the doctor acknowledged that the x-rays show a stable prosthesis. The doctor's notes fail to mention problems with weakness, chronic swelling, or circulatory issues that might support a need to elevate the leg.

(R. 1048.) As reflected by the above portion of the opinion and the rest of the ALJ's discussion, she carefully considered Dr. Chmell's opinion and especially his sit/stand restriction and opinion related to elevating/icing the left knee. Contrary to Plaintiff's contention, the ALJ did not cherry-pick the evidence and discussed many of Dr. Chmell's treatment notes and their overall context. *See Simila v. Astrue*, 573

---

[6] Dr. Chmell stated this as part of a more detailed impairment questionnaire, but Plaintiff raises as error only the ALJ's failure to include the elevating/icing the knee limitation in Plaintiff's RFC.

13

F.3d 503, 516 (7th Cir. 2009) ("[T]he ALJ is not required to discuss every piece of evidence but is instead required to build a logical bridge from the evidence to her conclusions."). That the ALJ's careful evaluation of the opinion resulted in her adopting Dr. Chmell's opinion related to sitting/standing and not his opinion related to elevating/icing the knee is not error. This is especially so here considering the vagueness of Dr. Chmell's opinion (which the ALJ noted) as to frequency, duration and other details of the elevation and icing required. The Court will not reweigh the evidence where the ALJ's conclusion was reasonable and supported by substantial evidence. *See Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). Accordingly, the Court finds the ALJ's evaluation of the medical opinion evidence and RFC assessment supported by substantial evidence.

### E. Step Five

Finally, Plaintiff argues the ALJ's Step 5 finding is not supported by substantial evidence because 99,000 jobs is not a significant number of jobs.[7] It is the Commissioner's burden at Step 5 to show a significant number of jobs the claimant can perform existing in the economy. *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). In her opinion, the ALJ found that Plaintiff could perform the jobs of telephone quotation clerk (59,000 available), order clerk food and beverage (16,000 job available), and charge account clerk (24,000 jobs available). Plaintiff

---

[7] Plaintiff's implication, raised in a footnote, that the VE's testimony was inconsistent with SkillTran's JobBrowser Pro, is not sufficient to raise the argument in an opening brief. *Crespo*, 824 F.3d at 674. However, even if it were sufficiently raised, it is unpersuasive as Plaintiff did not challenge at the hearing the VE's testimony regarding the number of jobs available. *See Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002).

14

cites only a non-precedential case from another district that found that 120,350 jobs was not significant. *See Sally S. v. Berryhill*, No. 2:18-cv-460, 2019 WL 3335033, at *11 (N.D. Ind. July 23, 2019).

However, Seventh Circuit precedent casts doubt on the conclusion in that case. *See Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) (finding that it is "well-established that 1,000 jobs is a significant number" for regional job availability); *Weatherbee v. Astrue*, 649 F.3d 656, 572 (7th Cir. 2011) (finding that 3,900 jobs in the regional economy and 140,000 jobs in the national economy were "well above the threshold for significance."). Furthermore, other circuits that have considered the issue have found that far fewer jobs constituted "significant" jobs in the national economy. *See Sanchez v. Comm'r of Soc. Sec.*, 705 F. App'x 95, 99 (3d Cir. 2017) (finding 18,000 jobs in the national economy is significant); *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (finding 6,000 jobs in the national economy significant); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (finding 10,000 jobs in the national economy significant). In considering the weight of the above precedent and in the absence of any controlling authority or even authority in this district that the number of jobs in the national economy here is not significant, the Court finds that 99,000 jobs available in the national economy is significant.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No. 31] is denied, and the Commissioner's request to affirm the ALJ's decision is granted.

**SO ORDERED.** ENTERED:

**DATE:   March 5, 2021**                              _____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**